IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA             *

    v.                                             *                    Crim. No. JKB-05-00415

CALVIN IGNATIOUS SAVOY,              *

    Defendant.                              *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM AND ORDER

Pending before the Court is petitioner Calvin Ignatious Savoy's Motion for Compassionate Release (ECF No. 261), as supplemented by his appointed counsel (ECF No. 267). The Motion is fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Motion will be granted, and Savoy's life sentence will be reduced to a term of 360 months of imprisonment, to be followed by five years of supervised release.

## I.      Background

In October 2006, a federal jury convicted Savoy of (1) conspiring to distribute 50 grams or more of cocaine base (more familiarly known as crack cocaine), in violation of 21 U.S.C. § 846, and (2) using a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).[1] *United States v. Savoy*, 315 F. App'x 464, 465 (4th Cir. 2009). In January 2007, Judge Andre M. Davis of this Court sentenced him to life in prison, without parole, on the § 846 conviction—which was the then-applicable mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)—plus ten years for the § 924(c) conviction. (ECF No. 148 at 2.)

---

[1] The original Judgment of Conviction refers to the offense as "possession of a firearm in furtherance of drug trafficking crime, aiding and abetting" and cites to 18 U.S.C. § 922(g)(1). (ECF No. 148.) The citation to § 922(g)(1), which prohibits felons from possessing firearms, appears to have been a clerical error. (*See* Presentence Report ("PSR") at 1 (citing to §924(c)).)

The evidence adduced at trial showed that Savoy was a member of a drug trafficking conspiracy located in the Pioneer City neighborhood of Severn, Maryland. (PSR at ¶¶ 6–8.) Savoy possessed crack cocaine on at least two occasions, in September 2004 and February 2005. (*Id.* at ¶ 10.) Savoy also beat and robbed an individual named Kevin Johnson in November 2004. (*Id.*) Other members of the conspiracy possessed semi-automatic handguns and participated in other acts of violence including shootings and beatings. (*Id.*)[2]

The evidence also showed that Savoy shot an Anne Arundel County police officer named William Hicks in the early morning hours of September 11, 2004. The circumstances of the shooting were as follows. At approximately 1:30 a.m., Officer Hicks responded to a brawl underway at Kim's Lounge, a nightclub in Odenton, Maryland. (*Id.* at ¶ 12.) Upon arriving at the scene, Officer Hicks observed an individual firing a gun into the air. (*Id.*) In response, Officer Hicks tackled this individual to the ground and struggled to secure the gun. While Hicks and the other individual were wrestling, Savoy "stood over Officer Hicks and attempted to fire[] directly at the Officer with a gun that Savoy possessed." (*Id.*) The gun misfired, but when Hicks got up minutes later to chase the other individual, Savoy fired again, this time hitting Hicks in the arm. (*Id.*)

Savoy appealed his convictions. The Fourth Circuit affirmed Savoy's conviction on the drug trafficking charge under 21 U.S.C. § 846, but reversed and vacated his sentence on the 18 U.S.C. § 924(c) charge. *Savoy*, 315 F. App'x at 466. As to the § 846 charge, the Fourth Circuit held that there was sufficient evidence for a reasonable jury to find that Savoy was a knowing and voluntary member of a conspiracy to distribute crack cocaine. *Id.* at 469. Moreover, the Fourth Circuit held that the district court properly imposed a mandatory life sentence on Savoy, as the

---

[2] The PSR is not specific as to the nature of these other acts of violence.

record reflected that he had at least two qualifying convictions and that 50 grams or more of crack cocaine could be attributed to him. *Id.* at 471, 473.

As to the § 924(c) charge, however, the Fourth Circuit found that there was "no evidence establishing that the shooting of Officer Hicks occurred in relation to the drug conspiracy." *Id.* at 469. The Court explained that the Government failed to present any evidence of drug activity at the scene of the nightclub or in connection with the shooting, and that "there is nothing but pure speculation that Savoy was in some theoretical way furthering the conspiracy when he shot a police officer during a nightclub brawl." *Id.* Accordingly, the Fourth Circuit vacated Savoy's conviction on the § 924(c) charge and the attendant ten-year sentence it carried. *Id.*

Because the life sentence on the § 846 charge was upheld, Savoy has remained in prison since 2005. In August 2020, this Court denied Savoy's Motion for Sentence Reduction pursuant to § 404 of the First Step Act. (ECF No. 250.)

## II.    Legal Standard

As a threshold matter, the Court must address the parties' dispute over whether Savoy's motion is properly evaluated under 18 U.S.C. § 3582(c)(1)(A)(i) or under § 3582(c)(1)(B). The former provision permits a court to reduce a term of imprisonment if (1) the defendant has met a minimal exhaustion of remedies requirement,[3] (2) there are extraordinary and compelling reasons for release, and (3) the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction in the sentence. The latter provision permits the court to reduce a sentence "to the extent otherwise expressly permitted by statute." As relevant here, § 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (codified at 21 U.S.C. § 841 note), expressly permits courts to impose a reduced sentence on a defendant by making retroactively applicable provisions of the

---

[3] The Government concedes that Savoy properly exhausted his remedies by requesting release from the Warden and waiting for at least 30 days to elapse before filing the instant Motion. (*See* ECF No. 267 at 2; ECF No. 275 at 4 n.4.)

Fair Sentencing Act, a 2010 law that reduced the sentences for certain crack cocaine offenses. *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020).

The Government argues that Savoy cannot seek relief under § 3582(c)(1)(A), relying on the Fourth Circuit's statement that "§ 3582(c)(1)(B) is the appropriate vehicle for a First Step Act motion." *United States v. Wirsing*, 943 F.3d 175, 183 (4th Cir. 2019). (ECF No. 275 at 6.) Savoy, by contrast, argues that his request for sentence reduction is not predicated solely on changes to sentencing law under the Fair Sentencing Act, but is also based on other developments in the law such as changes to 21 U.S.C. §§ 841(b) and 851, intervening judicial decisions pertaining to the categorical approach, and the decline in imposition of federal life sentences. (ECF No. 280 at 2.)

The distinction between the two provisions matters in this case because, in August 2020, this Court denied Savoy's earlier motion for a sentence reduction under § 404 of the First Step Act on the merits. (ECF No. 250.) This Court cannot "entertain a motion made under [§ 404] to reduce a sentence" if it had denied a previous § 404 motion "after a complete review of the motion on the merits." 132 Stat. 5222.

Here, the Court concludes that it can properly consider Savoy's motion under § 3582(c)(1)(A)(i). The fact that a defendant was eligible for a sentence reduction under § 3582(c)(1)(B) does not mean that a defendant could not *also* be eligible for release under § 3582(c)(1)(A) if the statutory predicates for compassionate release are met. *See United States v. Gibson*, 570 F. Supp. 3d 346, 353 (E.D. Va. 2021) (explaining that Congress's choice to link subsections (A) and (B) of § 3582(c)(1) by the conjunction "and" (rather than "or") indicates that Congress did not intend for either subsection to offer mutually exclusive remedies).[4] If Savoy's

[4] The Government relies on the Fourth Circuit's statement that "the very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *United States v. Ferguson*, 55 F.4th 262, 271 (4th Cir. 2022) (quoting *United States v. McCoy*, 981 F.3d 271, 287 (4th Cir. 2020)). However, that statement must be

4

sole argument for release was simply that his mandatory minimum sentence under § 841 would be lower today than it was at the time of his original sentencing in 2007 due to sentencing changes pursuant to the Fair Sentencing Act, the Court would indeed be barred from considering the pending motion in light of its August 2020 decision on Savoy's § 404 motion. However, Savoy raises other arguments that, collectively, demonstrate the presence of extraordinary and compelling reasons for relief under § 3582(c)(1)(A)(i), as discussed in more detail below.

## III.    Analysis

### A.  *Extraordinary and Compelling Reasons for Release*

A newly amended Sentencing Guidelines policy statement went into effect in November 2023, and provides criteria for determining whether extraordinary and compelling reasons for release exist. U.S.S.G. §1B1.13(b). The Guidelines provide that extraordinary and compelling reasons for release may be present when (1) the defendant is serving "an unusually long sentence," (2) he has served at least 10 years of that sentence, (3) there has been a subsequent change in the law (other than a non-retroactive Sentencing Guidelines amendment) such that there exists "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," and (4) the Court has given "full consideration of the defendant's individualized circumstances." *Id.* § 1B1.13(B)(6); *see also United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024) (discussing the newly applicable Guidelines). Additionally, the Guidelines contain a catchall provision, §1B1.13(B)(5), that confers discretion on district courts to consider other

read in context, where the court was rejecting a defendant's attempt to overcome the strictures of 28 U.S.C. § 2255 by using a compassionate release motion to mount a collateral attack on a conviction. *See id.* The holding does not apply when, as here, the underlying conviction is not being challenged. The Government's contention that Savoy's Motion is barred by *Ferguson* is unavailing, because Savoy does not seek to attack the validity of his underlying conviction or sentence—with the arguable exception of his attack on the alleged misclassification of his 1997 cocaine conviction, which the Court does not find persuasive, *see infra* n.9—but simply seeks a reduction in his concededly validly imposed sentence. This also distinguishes the instant case from *United States v. Boyd*, where the defendant sought to use a compassionate release motion to, *inter alia*, attack alleged errors in his original sentencing. No. 22-6639, 2023 WL 7381548, at *3 (4th Cir. Nov. 8, 2023).

extraordinary and compelling reasons for release. *United States v. Brown*, Crim. No. 08-00415, 2023 WL 8653179, at \*4 (D. Md. Dec. 13, 2023).

Here, the length of Savoy's sentence, coupled with subsequent legal developments, constitutes an extraordinary and compelling reason for a sentence reduction.

It scarcely bears mentioning that a life sentence is the harshest punishment, short of death, that a court in this country may impose. As Savoy correctly points out, life sentences have become much rarer than they were when Savoy was first sentenced in 2007. (ECF No. 267 at 13.) A 2021 Sentencing Commission report found that "the number of life sentences imposed has fallen steadily" over the prior 15 years. United States Sentencing Commission, *Life Sentences in the Federal System* 5 (2022). In fiscal year 2007, approximately 0.5% of federal sentences imposed were life sentences. *Id.* By contrast, over the past three fiscal years, only 0.2% of federal sentences imposed were life sentences. *See* United States Sentencing Commission, Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard. In other words, the frequency of life sentences has fallen by more than half in the time since Savoy was first sentenced. Moreover, over the past three fiscal years, less than 0.1% of individuals convicted of drug trafficking crimes— only 40 individuals in total in the entire federal system—have been sentenced to life imprisonment. *Id.* In short, it is exceedingly rare for federal defendants to be sentenced to life in prison today. Those that are given this harsh penalty have committed the most heinous of crimes. The Court can properly take these considerations into account in determining that Savoy is serving an unusually long sentence by today's standards. *See Brown*, 2023 WL 8653179, at \*4 (concluding that a drug trafficking sentence was unusually long when it was a month longer than 261-month average sentence for murder in the Fourth Circuit); *United States v. Carmichael*, Crim. No. 97-0329-CCB, 2023 WL 6809714, at \*3 (D. Md. Oct. 16, 2023) (taking into account Sentencing

Commission data to determine that a defendant's life sentence for murder was unusually long by today's standards); *United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020) (holding that the "severity" of a sentence, coupled with "the enormous disparity between that sentence and the sentence a defendant would receive today" can constitute an extraordinary and compelling reason for relief).

Furthermore, the Court considers the disparity between the sentence Savoy received and those of his codefendants. *See United States v. Eccleston*, 573 F. Supp. 3d 1013, 1017 (D. Md. 2021). While Savoy received a life sentence, his codefendants—all of whom were accused of similar conduct—either had charges against them dismissed or received sentences ranging from 57 months, *see United States v. Braswell*, Crim. No. 05-00415-JKB-1, to 96 months, *see United States v. Storey*, Crim. No. 05-00415-JKB-5; *United States v. Waters*, Crim. No. 05-00415-JKB-7. To be sure, this disparity was not entirely unwarranted; unlike Savoy, his codefendants pleaded guilty and received reduced sentences on account of their acceptance of guilt. And none of his codefendants shot a police officer. Nevertheless, while a substantial difference in sentence is appropriate given the differences in circumstances among these codefendants, the *extent* of the disparity between Savoy's sentence and those of his codefendants is excessive.

Another issue to consider is the fact that Savoy was considered a career offender at the time of his original sentencing (*see* PSR at ¶29), but that designation would not apply if he were sentenced today. That is so because the Fourth Circuit has since held that the definition of "conspiracy" under 21 U.S.C. § 846 is categorically broader than the generic definition of conspiracy, and that accordingly a conviction under § 846 is not a "controlled substance offense" for the purpose of determining whether a defendant qualifies as a career offender under §4B1.1(a) of the Sentencing Guidelines. *United States v. Norman*, 935 F.3d 232, 237–39 (4th Cir. 2019).

Here, Savoy's original sentence was dictated by the mandatory life sentence that was then applicable to his crime. Thus, his career offender status is not the reason why he has been serving a life sentence. That said, although the impact of *Norman* is not on its own sufficient to establish an extraordinary and compelling reason for release on the facts of this case, it is a factor that weighs somewhat in favor of such a finding. *See United States v. Curtin*, Crim. No. 14-0467, 2023 WL 8258025, at *3 (D. Md. Nov. 29, 2023) (finding that the fact that a §846 defendant would no longer be a career offender under *Norman* to be an extraordinary and compelling reason for a sentence reduction).

Finally, the Court considers evidence of Savoy's rehabilitation. *See Davis*, 99 F.4th at 659 (stating that rehabilitation "may be considered as one factor among several under §3582(c)(1)(A)"); U.S.S.G. § 1B1.13(d) (stating that rehabilitation by itself is not an extraordinary and compelling reason for release but that it "may be considered in combination with other circumstances"). Savoy has written a letter to the Court in which he apologizes to Officer Hicks and his family for "the grief [he] caused." (ECF No. 271-1.) He states that he was "impulsive and irresponsible" at the time that he committed the offense but that he has matured in his time in Bureau of Prisons ("BOP") custody. (*Id.*) Savoy states that he has "helped some great young men obtain their G.E.D. and it has made me realize that there is some place in this world that I can excel." (*Id.*) Savoy has served as a tutor to other inmates and has won numerous awards from the BOP for his mentorship activities. (ECF No. 239 at 15.) Moreover, when Savoy previously moved for a sentence reduction, the Government pointed to seven disciplinary infractions (all of which were relatively minor—such as insolence, disobeying a staff order, and unauthorized telephone usage—and none of which involved any violence or fighting). (ECF No. 271-1.) The Government in its briefing with respect to the instant Motion has not provided the Court with evidence of any

8

new disciplinary infractions. (*See generally* ECF No. 275.) It appears that after nearly twenty years in prison, Savoy has never once committed an act of violence, and has not committed even a minor infraction in almost five years.[5] Although Savoy's disciplinary record is not spotless, his post-sentencing behavior, taken as a whole, suggests that he has developed a level of maturity and responsibility that was lacking when he committed the underlying offense and was first sentenced.

For these reasons, the Court finds there to be extraordinary and compelling reasons for a reduction in Savoy's sentence.

## B. *Impact of the Officer Hicks Shooting on the § 3553(a) Factors*

Before turning to the substance of the § 3553(a) factors, the Court must address the difficult question of how to take into account the undisputed fact that Savoy shot Officer Hicks in September 2004.[6] The Government argues that "[t]he Fourth Circuit did not find that the shooting should not have been included as an overt act in the conspiracy" but "merely vacated Savoy's § 924(c) conviction, finding the government had not proven beyond a reasonable doubt that Savoy used or carried a firearm during and in relation to a drug trafficking offense charge." (ECF No. 275 at 10–11.) This argument reflects a serious misreading of the Fourth Circuit's opinion, which expressly stated that "there is *nothing but pure speculation* that Savoy was in some theoretical way furthering the conspiracy when he shot a police officer during a nightclub brawl." *Savoy*, 315 F. App'x at 469 (emphasis added). Accordingly, the Court cannot properly consider the shooting of

---

[5] The Court presumes that if Savoy had any concerning infractions in the past five years, the Government would have brought them to the Court's attention. To the extent that Savoy's record for the past five years would reflect any minor infractions, this does not change the Court's conclusion.

[6] The Court does not take any position on what crime Savoy could have been convicted of in connection with the shooting of Officer Hicks, whether the conceded facts before the Court rise to the level of an attempted murder, or whether the crime of shooting Officer Hicks violated any federal (as opposed to state) laws. As is relevant for this Motion, the Court notes that Savoy admitted to "the reckless act of firing in the direction of a law enforcement officer (Officer Hicks) and hitting him" (ECF No. 261 at 7) and that his counsel refers to the shooting as an attempted murder (ECF No. 280 at 4).

Officer Hicks as part of the offense conduct.

That said, while the Court cannot consider the shooting as part of the offense conduct, the Court may—and in the circumstances of this case, must—consider the shooting in evaluating the history and characteristics of the Defendant. *See United States v. Ventura*, 864 F.3d 301, 312 (4th Cir. 2017) (stating that at sentencing a court may take into account facts not determined by a jury, and even conduct of which a defendant has been acquitted, if the conduct has been proven by a preponderance of the evidence). There is no dispute that Savoy shot Officer Hicks. Indeed, Savoy himself admits to it. (*See* ECF No. 261 at 7.)

While the shooting of Officer Hicks is part of today's sentencing decision, the Court cannot attach such weight to the shooting that the Court is effectively sentencing Savoy for conduct for which he was never properly convicted. In imposing a sentence, the district court must "maintain a strong connection between the real conduct and the sentence imposed." *United States v. Tucker*, 473 F.3d 556, 564–65 (4th Cir. 2007). The Court may impose a higher sentence than it otherwise would due to other criminal conduct not part of the offense of conviction, but it should not "plac[e] undue emphasis on a single sentencing factor that is 'only tangentially connected' to the defendant's criminal conduct and at the expense of other relevant factors." *United States v. Whitley*, 781 F. App'x 176, 179 (4th Cir. 2019) (quoting *United States v. Zuk*, 874 F.3d 398, 410 (4th Cir. 2017)). That is so because sentencing law embraces a "relatedness principle," which ensures that sentencing is "based on the seriousness of the *actual offense* proven or admitted." *United States v. Allen*, 488 F.3d 1244, 1261 (10th Cir. 2007) (emphasis in original) (holding that the district court abused its discretion by effectively sentencing a defendant for the uncharged crimes of sexual abuse or solicitation of murder, rather than the far less serious crime of conviction, which was distribution of methamphetamine). In short, this Court may not "sentence[] the

10

defendant 'for an entirely different, and far more serious, crime'" than the offense of conviction. *United States v. Taylor*, 509 F. App'x 205, 214 (4th Cir. 2013) (quoting *Allen,* 488 F.3d at 1260).[7]

  At this late stage in the post-conviction process, the Court must contend with the ramifications of decisions that other legal actors made earlier in the life of this case.  The Government's charging decision, while understandable given the mandatory minimum sentences in place at the time, meant that Savoy was not directly charged with the shooting of Officer Hicks, but only for the use of a firearm in connection with drug trafficking.  Because the Fourth Circuit found that the Government failed to present any evidence tying the shooting to drug trafficking, there is no valid conviction with respect to that shooting.  Thus, the Court is left in the unusual position of striking the correct balance to arrive at an appropriate sentence for a defendant whose crime of conviction (while undoubtedly serious) pales in comparison to the crime of shooting a police officer in the line of duty—an act that everyone agrees happened, but one for which Savoy was never properly convicted.

  In arriving at an appropriate sentence for Savoy, the Court is faced with the difficult task of navigating between two opposite poles. At one pole, the Court has the responsibility to consider unrelated criminal conduct—even conduct of which Savoy was acquitted—in evaluating the history and characteristics of the defendant and several other sentencing factors. At the other, the Court must not attach undue weight at sentencing to the shooting over and above the actual offense of conviction—in other words (and to mix metaphors), the Court must not let the shooting drive the sentencing bus.  Thus, in evaluating the § 3553(a) factors, the Court will be careful to note

---

[7] As the Tenth Circuit explained in *Allen*, a sentencing system without a relatedness principle "would empower the government to obtain punishment for any number of unrelated crimes, based on bench trial rather than jury trial." 488 F.3d at 1255.  The Supreme Court has deemed it too "absurd" to seriously consider a system in which "a judge could sentence a man for committing murder even if the jury convicted him only of illegally possessing the firearm used to commit it—or of making an illegal lane change while fleeing the death scene." *Blakely v. Washington*, 542 U.S. 296, 306 (2004).

when the shooting of Officer Hicks is appropriately considered and when it is not.

## C.   Application of § 3553(a) Factors

Under § 3553(a), the Court must impose "a sentence sufficient, but not greater than necessary," after considering (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to, *inter alia*, reflect the seriousness of the offense, provide deterrence, and protect the public, (3) the kinds of sentences available, (4) applicable Sentencing Guidelines, (5) any pertinent policy statement issued by the Sentencing Commission, (6) the need to avoid unwarranted sentencing disparities, and (7) the need to provide restitution to any victims.

The Court begins with the Sentencing Guidelines. Under today's Guidelines, the analysis would begin with Savoy's base offense level of 24. U.S.S.G. §2D1.1(a). He would then receive a 2-level enhancement for use of a dangerous weapon under §2D1.1(b)(1), and another 2-level enhancement for use of violence under §2D1.1(b)(2). (*See* PSR at ¶¶ 8–10 (stating that members of the conspiracy possessed firearms and committed acts of violence).) This would translate to an adjusted offense level of 28.[8] Combined with his criminal history category of VI, this would yield a Guidelines range sentence of 140–175 months incarceration.[9]   The dramatically shorter

---

[8] The Court agrees with Savoy that the 6-level enhancement for crimes in which the victim is a government officer or other official victim under §3A1.2 is inapplicable, in light of the Fourth Circuit's holding that there was no evidence tying Savoy's shooting of Officer Hicks to the drug trafficking offense. That said, even if the Court were to apply this enhancement, his final offense level would then be 34. Combined with a criminal history category of VI, his Guidelines range would be 262–327 months, which is of course less than his current life sentence and still less than the 360-month sentence the Court imposes today.

[9] As the Court has previously noted, at the time of Savoy's original conviction he was considered a career offender. Under today's law, if Savoy were a career offender, because the statutory maximum allowable punishment under 21 U.S.C. §841(b)(1)(B) is life imprisonment because he had a prior serious drug felony conviction, his final offense level would be 37, with a criminal history category of VI. §4B1.1(b). This would yield a Guidelines range of 360 months to life in prison. U.S.S.G. Ch. 5 Pt. A (Sentencing Table). But, as the Court has already explained, Savoy is not a career offender under today's law, so this sentencing enhancement is inapplicable. *See United States v. Moore*, Crim. No. 18-431-ELH, 2022 WL 137865, at *14 (D. Md. Jan. 14, 2022) (noting that, although *Norman* is not retroactive, a court is "not required to ignore it" when analyzing the § 3553(a) factors on a compassionate release motion). Since the career offender designation is inapplicable, Savoy's argument that his 1997 cocaine distribution

Guidelines range is a reason to conclude that a life sentence is excessive. That said, the Court finds that a substantial upward variance from this range is appropriate to account for Savoy's shooting of Officer Hicks, which is relevant to several sentencing factors, as detailed below.

The Court next turns to the nature and circumstances of the offense, which in the context of this case means only Savoy's narcotics conspiracy crime, not the shooting of Officer Hicks. Even putting aside the shooting of Hicks, however, Savoy's crime was serious. A jury found that Savoy was an active member of a violent conspiracy that operated an open-air drug market in Severn, Maryland. (PSR at ¶2.) Members of the conspiracy shot and beat rivals, and committed "random acts of violence" to enhance their standing within the group. (*Id.* at 3.) With respect to Savoy in particular, the record reflects that he beat and robbed an individual in Severn on November 20, 2004. (*Id.* at 4.) Moreover, crack cocaine is a dangerous drug that has devastated communities throughout the country. *See United States v. Curry*, Crim. No. 05-282-1, 2021 WL 2644298, at *6 (M.D.N.C. June 25, 2021) ("The destruction crack cocaine ravages on a community cannot be overstated[.]"). A substantial sentence remains appropriate for this crime. That said, a life sentence is out of step with the severity of the conduct. As the Court has discussed above, federal life sentences for drug trafficking offenses are vanishingly rare today. Over the past three fiscal years in the Fourth Circuit, only two defendants convicted of crack cocaine trafficking were sentenced to 30 or more years in prison, and none were sentenced to life. United States Sentencing Commission, Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard. Over 90% were sentenced to less than 15 years in prison. *Id.*

Next, the Court considers the history and characteristics of the defendant. Here, the Court

---

conviction should not qualify as a predicate offense (ECF No. 267 at 7–8) is moot, although the Court notes that in any event the argument appears to be foreclosed by the Supreme Court's recent decision in *Brown v. United States*, 144 S. Ct. 1195 (2024).

13

will take into account the Officer Hicks shooting. *See Allen*, 488 F.3d at 129. Shooting a police officer in the line of duty is a despicable crime, and one that merits severe consequences. Such a crime is so serious not because police officer's lives are worth more than those of others, but because of the uniquely important function the police play in safeguarding our society and upholding the rule of law. In addition to that shooting, Savoy's 2006 conviction followed a lengthy criminal history, enough to earn him a criminal history category of VI. (PSR at ¶¶ 8–9.) However, this history mostly consisted of nonviolent drug offenses, somewhat mitigating its severity. Moreover, as the Court has discussed above, Savoy's history and characteristics in the years since his sentencing are markedly more positive. He has committed no acts of violence, has earned his G.E.D., has undertaken additional educational programming, and has mentored his fellow inmates. This evidence of rehabilitation weighs in favor of a lighter sentence than would otherwise be imposed. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (holding that "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing").

The following sentencing factor is the need for the sentence imposed to (a) reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense, (b) to afford adequate deterrence, (c) to protect the public, and (d) to provide the defendant with training and treatment. The Court concludes that a lengthy sentence is needed to satisfy these subfactors. The underlying drug trafficking offense was serious, and the Court can properly consider the shooting of Officer Hicks when considering the need for deterrence and protecting the public (although not to reflect the seriousness of "the offense" or to provide punishment for "the offense").

That said, a life sentence is excessive on the facts of this case. Over the past three fiscal

years, the average sentence for a consummated murder—as opposed to a shooting or an attempted murder—in the Fourth Circuit was 299 months. United States Sentencing Commission, Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard.    The Court also considers Savoy's age. He is now 46 years old and, assuming he qualifies for all available good-time credits, Savoy will likely be in his mid-fifties by the time he completes the 360-month sentence the Court will impose. Recidivism after the age of fifty is substantially less likely, and courts take this fact into account when weighing whether a sentence reduction is appropriate. *See United States v. Harrison*, Crim. No. 96-116-ELH, 2023 WL 4744747, at *11 (D. Md. July 25, 2023).

Next, the Court considers the need to avoid unwarranted sentencing disparities. As the Court has already noted several times, Savoy's sentence far exceeds the sentence that similarly situated defendants would receive today. Indeed, his sentence far exceeds that even of defendants convicted of more serious crimes than his. This militates in favor of a reduced sentence.[10]

Finally, the Court notes that it has reviewed a December 2023 letter from Officer Hicks opposing Savoy's release. The Court recognizes that Savoy has caused tremendous and continuing harm to Officer Hicks and his family. The Court takes this into account in the lengthy sentence it will impose. However, the criminal justice system must take into account broader societal interests beyond those of the victims of crime. *See Graham v. Florida*, 560 U.S. 48 (2010) (identifying the legitimate goals of punishment as retribution, deterrence, incapacitation, and rehabilitation). Moreover, the Court has a responsibility to uphold the law, and concludes that to effectively sentence Savoy to life for a crime for which he was never properly convicted would contravene the foundational tenet of our system that judges must "base punishment upon[] the *real conduct*

---

[10] The Court has also considered the kinds of sentences available, and the need to provide restitution to any victims, and finds that in this case they do not significantly impact the analysis of whether and to what extent a sentence reduction is appropriate.

that underlies the crime of conviction." *United States v. Booker*, 543 U.S. 220, 250 (2005) (emphasis in original).

Taking all these factors into account, the Court concludes that the sentence that is sufficient but not greater than necessary to fulfill the statutory purposes of punishment is a term of 360 months in prison, to be followed by five years of supervised release. This sentence is substantially above the Guidelines Range not to punish Savoy for the shooting of Officer Hicks, but rather to take into account the impact that the shooting has on several of the sentencing factors set forth in § 3553(a), as discussed above.

## IV.    Conclusion

For the foregoing reasons, it is ORDERED that:

1.  Savoy's Motion for Compassionate Release (ECF No. 261) is GRANTED; and

2.  A Second Amended Judgment SHALL ISSUE, resentencing Savoy to a term of 360 months imprisonment, to be followed by five years of supervised release.

DATED this _20_ day of June, 2024.

BY THE COURT:

James K. Bredar
United States District Judge